IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONTANGO OPERATORS, INC. and | § | |
| CERTAIN UNDERWRITERS SEVERALLY | § | |
| SUBSCRIBING TO COMBINED COVER | § | |
| NOTE JHB-CJP-1718, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0532 |
| | § | |
| UNITED STATES OF AMERICA and | § | |
| WEEKS MARINE, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Contango Operators, Inc. ("Contango") owns a pipeline that runs along the floor of the Gulf of Mexico.  In February of 2010 a dredge owned by Weeks Marine, Inc. ("Weeks Marine") struck and ruptured that pipeline.  Contango and Certain Underwriters Severally Subscribing to Combined Cover Note JHB-CJP-1718[1] filed this action against Weeks Marine and the United States of America to recover for the ensuing damages.  The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333. The following motions are pending before the court:

- Weeks Marine, Inc.'s Motion for Reconsideration of the Court's Opinion and Order (Rec. Doc. 34) ("Weeks Marine's Motion for Reconsideration") (Docket Entry No. 60);

- United States' Motion for Summary Judgment ("United States' Motion for Summary Judgment on Liability") (Docket Entry No. 50);

_____

[1]The court will refer to the plaintiffs collectively as "Contango."

- Motion for Summary Judgment on Behalf of Weeks Marine Regarding Liability ("Weeks Marine's Motion for Summary Judgment on Liability") (Docket Entry No. 61);

- Plaintiffs' Response to the USA's Motion for Summary Judgment on Liability and Cross-Motion for Summary Judgment on the USA's Liability ("Contango's Cross-Motion for Summary Judgment on United States' Liability") (Docket Entry No. 62);

- Plaintiffs' Response to Weeks Marine's Motion for Summary Judgment on Liability and Cross-Motion for Summary Judgment on Liability ("Contango's Cross-Motion for Summary Judgment on Weeks Marine's Liability") (Docket Entry No. 83).

- Plaintiffs' Motion for Partial Summary Judgment on Weeks Marine's Fault - Failure to Rebut Presumption [and Proposed Order] ("Contango's Motion for Summary Judgment on Weeks Marine's Fault") (Docket Entry No. 66);

- Motion for Summary Judgment on Behalf of Weeks Marine - Government Contractor Defense ("Weeks Marine's Motion for Summary Judgment on Government Contractor Defense") (Docket Entry No. 59);

- Plaintiffs' Response to Weeks Marine's Motion for Summary Judgment and Cross-Motion for Summary Judgment on the Government Contractor Defense ("Contango's Cross-Motion for Summary Judgment on Government Contractor Defense") (Docket Entry No. 82); and

- Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defense of Comparative Negligence [and Proposed Order] ("Contango's Motion for Summary Judgment on Res Judicata") (Docket Entry No. 65).

Having reviewed the motions, the record, and the relevant law, the court is persuaded that all pending motions should be denied.

## I. **Background**

### A. **Undisputed Facts**

Under the Rivers and Harbors Act of 1899 ("RHA"), 33 U.S.C. § 403, no submarine structure may be built in the navigable waters

of the United States unless authorized by the United States Army Corps of Engineers (the "Corps"). Accordingly, in September of 2007 Contango filed with the Regulatory Division of the Corps an application for a permit to construct a natural gas pipeline in the Gulf of Mexico off the coast of Louisiana.[2] The application indicated that the pipeline would cross the "Atchafalaya Pass Channel."[3] As part of the application review process, an employee in the Regulatory Division cross-referenced a list of Corps-maintained channels to determine whether the "Atchafalaya Pass Channel" was a Corps-maintained channel.[4] That list did not explicitly refer to an "Atchafalaya Pass Channel"; it did include an area identified as the "Atchafalaya River, Bayous Chene, Boeuf & Black."[5] At all times relevant to this litigation the channel labeled in Contango's permit application as the "Atchafalaya Pass

---

[2]August 27, 2007, letter from T. Baker Smith, Inc. regarding Permit Application Submittal, Ex. 1 to Contango's Cross-Motion for Summary Judgment on United States' Liability, Docket Entry No. 62-2.

[3]Id.

[4]Deposition of Ronnie Wayne Duke, Ex. 3 to Contango's Cross-Motion for Summary Judgment on United States' Liability, Docket Entry No. 62-4, pp. 32:20-33:16; Deposition of Kristin Johnson, Ex. 6 to Contango's Cross-Motion for Summary Judgment on United States' Liability, Docket Entry No. 62-7, pp. 58:14-59:18.

[5]Deposition of Kristin Johnson, Ex. 6 to Contango's Cross-Motion for Summary Judgment on United States' Liability, Docket Entry No. 62-7, p. 58:14-19; Commander's Inquiry, Ex. 2 to Contango's Cross-Motion for Summary Judgment on United States' Liability, Docket Entry No. 62-3, pp. 3-4.

Channel" was included within the "Atchafalaya River, Bayous Chene, Boeuf & Black."[6]  The Corps granted Contango a permit to construct its pipeline in November of 2007.[7]  Information concerning the proposed placement of the Contango pipeline across the Atchafalaya channel was not forwarded from the Regulatory Division to the Waterways Division within the Corps.[8]  The Waterways Division provides the locations of submarine pipelines to the engineers who prepare dredging contracts for Corps-maintained channels.[9]

After completing the pipeline in April of 2008 Contango provided as-built drawings that illustrated the intersection of the pipeline and the Atchafalaya channel to the Minerals Management Service ("MMS"), the National Ocean Service ("NOS"), and the United States Coast Guard (the "Coast Guard").[10]  No division within the Corps received the as-built drawings.[11]

---

[6]Id.  The court will refer to the area generally as the "Atchafalaya channel."

[7]Department of the Army Permit, Ex. 2 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-4, pp. US000024-US000027.

[8]Deposition of Kristin Johnson, Ex. 6 to Contango's Cross-Motion for Summary Judgment on United States' Liability, Docket Entry No. 62-7, p. 35:1-17.

[9]Id.

[10]Letter from Contango to MMS, June 9, 2008, Ex. 7 to Contango's Cross-Motion for Summary Judgment on United States' Liability, Docket Entry No. 62-8.

[11]Videotaped Deposition of Ronnie W. Duke, Ex. 1 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-3, p. 124:10-15.

In April of 2009 the Corps began to solicit bids on a contract for the dredging of the Atchafalaya channel.[12]  Corps engineers prepared project specifications that were provided to the bidders and would ultimately become part of the dredging contract.[13]  Five submarine pipelines located in or near the channel were identified in those specifications; the Contango pipeline, however, was omitted.[14]  Weeks Marine was awarded the contract in August of 2009.[15]  The Contango pipeline was not among the pipelines that were identified in the final dredging contract.[16]

The National Oceanic and Atmospheric Administration ("NOAA") is the federal agency tasked with the publication of nautical charts.  Prior to November 25, 2009, the relevant NOAA charts --

---

[12]Deposition of Kristin Johnson, Ex. 6 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-13, pp. 27:13-29:20; Atchafalaya River and Bayous Chene, Boeuf, and Black - Construction Solicitation and Specifications, Ex. 7 to Weeks Marine's Motion for Summary Judgment on Liability, Docket Entry No. 61-3.

[13]Deposition of Kristin Johnson, Ex. 6 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-13, p. 61:15-24.

[14]Id.

[15]Contract Excerpts, Ex. 8 to Weeks Marine's Motion for Summary Judgment on Liability, Docket Entry No. 61-4; United States' Statement of Uncontested Facts in Support of Its Motion for Summary Judgment ("Statement of Facts"), attached to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-1, ¶ 17.

[16]Contract Excerpts, Ex. 8 to Weeks Marine's Motion for Summary Judgment on Liability, Docket Entry No. 61-4; Statement of Facts, attached to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-1, ¶ 16.

Electronic Navigational Chart ("ENC") US4LA21E and Raster Navigational Chart ("RNC") 11351 -- displayed the Atchafalaya channel without the Contango pipeline.[17]   After receiving information from MMS about a new pipeline across the Atchafalaya channel NOAA published to its website the updated ENC US4LA21E on November 25, 2009, and the updated RNC 11351 on December 3, 2009.[18] Both the updated ENC and the updated RNC (collectively, the "updated NOAA charts") depicted the Contango pipeline.[19]  The Coast Guard also publishes nautical information to the public in the form of a weekly Local Notice to Mariners ("LNM").[20]   On December 2, 2009, the Coast Guard published LNM 48/09, announcing the addition of a submarine pipeline to the area displayed in the RNC.[21]   The updated NOAA charts and LNM 48/09 were published after Weeks Marine had been awarded the contract and had commenced dredging.[22]

---

[17]Declaration of Marc Higgins, Ex. 4 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-6, ¶¶ 5-7.

[18]Id. ¶¶ 7-8.

[19]Id.

[20]Title 33, Part 72 of the Code of Federal Regulations requires that LNMs "report[] changes to and deficiencies in aids to navigation that are established or maintained and operated by or under the authority of the Coast Guard, and any other information pertaining to the waterways within each Coast Guard district that is of interest to the mariner." 33 C.F.R. § 72.01-5.

[21]Local Notice to Mariners, Ex. 5 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-12.

[22]United States' Response in Opposition to Contango's Cross Motion for Summary Judgment ("United States' Response to Contango's Cross-Motion for Summary Judgment"), Docket Entry No. 80, ¶ 12.

Weeks Marine's non-self-propelled dredging vessel, the G.D. MORGAN, struck the Contango pipeline on February 24, 2010.[23]   The pipeline was ruptured, and Contango incurred losses as a result.

**B.   Contango's First Amended Complaint**

Contango filed its amended complaint on July 27, 2011, bringing negligence causes of action against the United States and Weeks Marine.[24]   In Count I Contango alleges that the United States breached the duty to ensure that dredging activities did not interfere with or endanger the Contango pipeline.[25]   Contango alleges in Count II that Weeks Marine breached its duty to conduct dredging operations in a reasonable manner.[26]   Contango also alleges that Weeks Marine is presumed to be at fault because Weeks Marine's moving vessel, the G.D. MORGAN, caused damage to a stationary object, the Contango pipeline.[27]   In Count III Contango alleges that both defendants committed negligence per se based on violations of

---

[23]Deposition of Jennifer Caldwell, Ex. 7 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-14, pp. 130:8-132:25.

[24]First Amended Complaint, Docket Entry No. 24.

[25]Id. ¶¶ 15-16.   Contango asserts that pursuant to the Suits in Admiralty Act ("SAA"), 46 U.S.C. § 30901 et seq., the United States has waived its sovereign immunity with respect to Contango's claims.   First Amended Complaint, Docket Entry No. 24, ¶ 14.

[26]Id. ¶¶ 19-20.

[27]Id. ¶ 21.

various federal regulations pertaining to safety.[28]  Contango seeks monetary damages.[29]

## II.  Weeks Marine's Motion for Reconsideration

Weeks Marine moves for reconsideration of the court's October 26, 2011, Memorandum Opinion and Order granting the United States' motion to dismiss Weeks Marine's cross-claim.[30]  In that opinion the court relied on the Contract Disputes Act ("CDA"), 41 U.S.C. § 605(a).[31]  Section 605(a) requires that all contractual disputes between a contractor and the United States be first submitted to the "contracting officer for a decision."  The court concluded that the cross-claim was essentially contractual and therefore within the purview of the CDA.[32]  Because United States district courts do not have jurisdiction to hear a claim that falls under the CDA and has not been submitted to the contracting officer, see Trevino v. Gen. Dynamics Corp., 865 F.2d 1474, 1489 (5th Cir. 1989), the court concluded that it was without jurisdiction to decide Weeks Marine's cross-claim.[33]

---

[28]Id. ¶ 24.

[29]Id. at 8.

[30]Weeks Marine's Motion for Reconsideration, Docket Entry No. 60.

[31]Effective January 4, 2011, the statute was relocated to 41 U.S.C. § 7103(a)(1).  The court cites the section number that was effective at the time of the incident, 41 U.S.C. § 605(a).

[32]Memorandum Opinion and Order, Docket Entry No. 34, p. 8.

[33]Id. at 11.

**A.    Standard for Reconsideration**

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."  St. Paul Mercury Insurance Company v. Fair Grounds Corporation, 123 F.3d 336, 339 (5th Cir. 1997).  The court's October 26, 2011, Memorandum Opinion and Order was interlocutory, not final.  See Moody v. Seaside Lanes, 825 F.2d 81, 85 & n.3 (5th Cir. 1987) (explaining that only the resolution of an entire adversary proceeding is "final").  Courts reconsider interlocutory orders under Rule 54(b), which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of [a final judgment]."

The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b).  "[R]econsideration of an interlocutory decision is available under the standard "'as justice requires.'"  Judicial Watch v. Department of the Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (citations and quotation marks omitted); see also Dos Santos v. Bell Helicopter Textron, Inc. District, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) ("whether to grant such a motion rests within the discretion of the court").  The standard requires a determination of "whether reconsideration is necessary under the relevant circumstances."  Judicial Watch, 466 F. Supp. 2d at 123.  Underlying a motion for reconsideration is

-9-

"the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."   Id.

## B.   Analysis

Weeks Marine argues that notwithstanding the CDA the court may exercise supplemental jurisdiction over the cross-claim pursuant to Federal Rule of Civil Procedure 13(g), which provides that any party may bring a cross-claim against a co-party if the cross-claim "arises out of the transaction or occurrence that is the subject matter of the original action."[34]   Weeks Marine also argues that the CDA only applies to original claims, not cross-claims.[35]   Weeks Marine therefore contends that the court does not need independent subject matter jurisdiction pursuant to the CDA to exercise jurisdiction over the cross-claim.[36]

Weeks Marine cites to no law that authorizes the court to disregard the requirements of the CDA.  A district court generally may exercise jurisdiction over a Rule 13(g) cross-claim for which there is no independent basis for jurisdiction.  See 28 U.S.C. § 1367 ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action

---

[34]Weeks Marine's Motion for Reconsideration, Docket Entry No. 60, pp. 5-10.

[35]Id. at 10-13.

[36]Id. at 12-13.

within such original jurisdiction that they form part of the same case or controversy under Article III"). But Rule 13(g) and § 1367 do not provide an end-run around the specific jurisdictional prerequisites in the CDA. The CDA contains no special exception for cross-claims, and the court declines to read one into the statute. Furthermore, under Fifth Circuit precedent a defendant's cross-claim against the United States based on a government contract is subject to the CDA. Trevino, 865 F.2d at 1489. Because the court concluded in its October 26, 2011, Memorandum Opinion and Order that Weeks Marine's cross-claim was essentially contractual, the court reaffirms its prior holding that the CDA divests the court of jurisdiction.

The interests of judicial economy, fairness, and justice do not alter this conclusion. Congress has dictated an administrative process within which government contractors must abide. Moreover, Weeks Marine is not forever barred from having its day in court -- the Fifth Circuit has held that district courts may exercise jurisdiction over appeals from the administrative determination of claims. See Bethlehem Steel Corp. v. Avondale Shipyards, Inc., 951 F.2d 92, 93-94 (5th Cir. 1992). Therefore, Weeks Marine may pursue such an appeal at the appropriate time; but the court will not override the administrative and appeals processes. Because justice does not require reconsideration of the court's October 26, 2011, Memorandum Opinion and Order, see Judicial Watch, 466 F. Supp. 2d

at 123, Weeks Marine's Motion for Reconsideration (Docket Entry No. 60) will be denied.

### III.  **Motions for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure mandates summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party moving for summary judgment "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir. 2005).  When the nonmoving party would bear the ultimate burden of proof at trial, the moving party may satisfy its summary judgment burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2554 (1986).  Rule 56 does not require such a movant to negate the elements of the nonmovant's case. Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).  Where the moving party would bear the burden of proof at trial, it must present evidence that would require "a directed verdict if the evidence went uncontroverted at trial." Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991).  A defendant moving for summary judgment based on an affirmative defense "'must establish each element of that defense as a matter of law.'"

-12-

Shanks v. AlliedSignal, Inc., 169 F.3d 988, 992 (5th Cir. 1999)
(quoting Crescent Towing & Salvage Co., Inc. v. M/V Anax, 40 F.3d
741, 744 (5th Cir. 1994)).

Once the movant has carried this burden the nonmovant must
show that material facts exist over which there is a genuine issue
for trial. Reyna, 401 F.3d at 349 (citing Celotex, 106 S. Ct. at
2553-54). The parties may support the existence or nonexistence of
a genuine fact issue by either (1) citing to particular parts of
the record, including depositions, documents, electronically stored
information, affidavits or declarations, admissions, and interroga-
tory answers, or (2) showing that the materials cited do not
establish the absence or presence of a genuine dispute or that an
adverse party cannot produce admissible evidence to support the
fact. Fed. R. Civ. P. 56(c)(1)(A)-(B). In reviewing this evidence
"the court must draw all reasonable inferences in favor of the
nonmoving party, and it may not make credibility determinations or
weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc.,
120 S. Ct. 2097, 2110 (2000).

## A. Defendants' Liability

The United States, Weeks Marine, and Contango have filed
separate motions for summary judgment regarding the defendants'
liability: United States' Motion for Summary Judgment on Liability
(Docket Entry No. 50); Weeks Marine's Motion for Summary Judgment
on Liability (Docket Entry No. 61); Contango's Cross-Motion for

Summary Judgment on United States' Liability (Docket Entry No. 62);
and Contango's Cross-Motion for Summary Judgment on Weeks Marine's
Liability (Docket Entry No. 83).  Each defendant attempts to shift
all liability to the other, and each reasons that it discharged any
duty owed to Contango.  Contango argues that no defendant conformed
with the requisite standard of care and that the defendants are
jointly and severally liable for the damages

    1.  <u>The United States' Liability</u>

Contango and the United States dispute the scope of the
United States' duty.  In its motion for summary judgment the
United States argues that the duty it owed to Contango was
discharged either when the updated NOAA charts were published or
when LNM 48/09 was issued.[37]  Relying on <u>De Bardeleben Marine Corp.</u>
<u>v. United States</u>, 451 F.2d 140 (5th Cir. 1971), the United States
thus frames its duty as a "duty to notify the public" of the
existence of the Contango pipeline.[38]  The United States seeks to
shift all liability to Weeks Marine by arguing that Weeks Marine
had in its possession, but failed to use, the updated NOAA charts
and LNM 48/09.[39]  The United States points to evidence showing that

_____

[37]Memorandum of Law in Support of the United States' Motion for
Summary Judgment ("Memorandum of Law"), attached to United States'
Motion for Summary Judgment on Liability, Docket Entry No. 50-2,
p. 1.

[38]<u>Id.</u> at 7.

[39]United States' Reply to Its Motion for Summary Judgment
("United States' Reply in Support"), Docket Entry No. 70, p. 5.

the Weeks Marine Project Engineer downloaded RNC 11351 in November of 2009. Although that chart had not yet been updated and therefore did not show the pipeline, the United States argues that the Project Engineer agreed to a warning informing her that she was responsible for ensuring that the chart was current.[40] The United States also points to evidence that LNM 48/09 was available to the crew members of the G.D. MORGAN in December of 2009.[41]

Contango disputes the United States' characterization of the United States' duty: "[The Corps] had a continuing duty to notify its dredging contractor of hazards that [the Corps] became aware of during the course of the contract."[42] Contango contends that the United States' reliance on Bardeleben is misplaced; instead, Contango relies on Michigan Wisconsin Pipeline v. Williams-McWilliams, 551 F.2d 945 (5th Cir. 1977), and Southern Natural Gas Co. v. Pontchartrain Materials, Inc., 711 F.2d 1251 (5th Cir. 1983), to support its formulation of the United States' duty.[43] Contango argues that Weeks Marine's failure to review publicly-available charts constituted a breach of Weeks Marine's duty to

---

[40]Deposition of Jennifer Caldwell, Ex. 7 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-14, p. 97:1-11.

[41]Deposition of Wilbert Dunbar, Ex. 9 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-16, p. 91:8-25.

[42]Contango's Cross-Motion for Summary Judgment on United States' Liability, Docket Entry No. 62, p. 8.

[43]Id. at 8-9.

Contango, but did not discharge the Corps' duty.[44]   Weeks Marine
also opposes the United States' motion.[45]

     (a)  Applicable Law

To establish a negligence claim under admiralty law the
plaintiff bears the burden to show that:  (1) the defendant owed
the plaintiff a duty; (2) the defendant breached that duty; and
(3) the breach caused the plaintiff's alleged injuries.  <u>Canal
Barge Co. v. Torco Oil Co.</u>, 220 F.3d 370, 376 (5th Cir. 2000).  The
duty owed -- i.e., the obligation to conform to a certain standard
of care -- is a question of law for the court.  <u>Theriot v.
United States</u>, 245 F.3d 388, 400 (5th Cir. 1998).  Whether that
duty was breached is a question of fact.  <u>Id.</u> at 394.  In an
allision[46] case the standard of care is reasonable care under the
circumstances.  <u>Id.</u> at 400; <u>Southern Natural Gas Co. v.
Pontchartrain Materials, Inc.</u>, 711 F.2d 1251, 1254 (5th Cir. 1983).
The duty owed by the United States in a suit brought against it
pursuant to the Suits in Admiralty Act is "'equal to that of a
private person in like circumstances.'" <u>Southern Natural Gas</u>, 711
F.2d at 1254 (quoting <u>Canadian Pac. (Bermuda) Ltd. v.
United States</u>, 534 F.2d 1165, 1168 (5th Cir. 1976)).

--------

[44]<u>Id.</u> at 11-12.

[45]Weeks Marine's Memorandum in Opposition to United States'
Motion for Summary Judgment on Liability ("Weeks Marine's
Opposition on United States' Liability"), Docket Entry No. 58.

[46]"An allision is a collision between a moving vessel and a
stationary object."  2 Thomas J. Schoenbaum, Admiralty & Maritime Law,
§ 14-2 (3rd ed. 2001).

The "existence and scope of a duty" depends on the "'foreseeability of the harm suffered by the complaining party.'" In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 211 (5th Cir. 2010) (quoting Consolidated Aluminum Corp. v. C.F. Bean Corp., 833 F.2d 65, 67 (5th Cir. 1987)). The duty to use reasonable care is "owed only with respect to the interest that is foreseeably jeopardized" by the alleged conduct. Great Lakes Dredge, 624 F.3d at 211 (internal quotation marks omitted). In the Fifth Circuit a harm is considered

> a foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.

Id. (internal quotation marks omitted). In their briefs the parties focused on three Fifth Circuit cases dealing with the scope of the United States' duty.

In Bardeleben in February of 1964 a tugboat dropped its anchor on a submarine pipeline that had been laid pursuant to a permit from the Corps. 451 F.2d at 140, 141. The pipeline owner sought to affirm the district court's finding that the United States was liable. Id. at 142. The tugboat was carrying a chart -- issued by the United States Coast and Geodetic Survey[47] in December of 1962 -- that erroneously failed to reflect the existence of the pipeline.

---

[47]The Coast and Geodetic Survey eventually became a component of what is now the NOAA.

Id. at 141-42.  The existence and location of the pipeline had been published, however, through a revised Coast and Geodetic Survey chart in September of 1963 and an LNM in October of 1963 that announced that revised chart.  Id. at 141.  After concluding that the United States should be held to a duty of due care "in the preparation and dissemination" of charts and LNMs, the Fifth Circuit reasoned that the United States' "obligation ceases at that time in which a prudent shipowner-navigator would have reasonably received" the revised chart or the LNM containing the revised information.  Id. at 149.  Accordingly, the Fifth Circuit reversed, holding that "the duty of the United States as cartographer" was not breached as a matter of law.  Id. at 141, 149.

Michigan Wisconsin involved an allision between a dredger-contractor and a pipeline.  The pipeline had been constructed pursuant to a permit from the Corps, but the specifications attached to the dredger's government contract did not show the pipeline crossing the area to be dredged.  551 F.2d at 948.  The contract also contained two "site inspection clauses" in which the dredger agreed to take steps "reasonably necessary to ascertain the nature and location of the work and the general and local conditions which can affect the work and the cost thereof" and to "acknowledge that he ha[d] investigated and satisfied himself as to the conditions affecting the work."  Id. at 949 (internal quotation marks omitted).  After the accident the pipeline owner sued the dredger for damages.  Id. at 947.  The dredger filed a third-party complaint, arguing that

-18-

the United States was at fault for providing specifications that
failed to show the pipeline. Id. at 947.

The district court in Michigan Wisconsin found in favor of the
pipeline owner and against the dredger, and dismissed the dredger's
third-party complaint. Id. Affirming the judgment against the
dredger and reversing the dismissal of the complaint against the
United States,[48] the Fifth Circuit held the United States may be
held liable where it has "by a prolonged course of conduct lead a
contractor to expect that when certain kinds of material structures
are present in an area in which a contract is to be performed that
the structures will be shown on the specifications drawings." Id.
at 951. The court held that "the absence of a depiction" of a
pipeline amounted to a "positive assertion" or "representation" on
which a dredger-contractor was entitled to rely, "given a prolonged
course of conduct justifying contractor reliance on the
[United States] providing this information one way or the other in
specifications drawings." Id. (internal quotation marks omitted).
The court concluded that the Corps' regular practice of depicting
pipelines on the specifications attached to dredging contracts
amounted to such a course of conduct. Id. at 952-53. Moreover,
the court held that "government contractors . . . are not obligated
to make an independent investigation" into the accuracy of

---

[48]Although the court affirmed the finding of negligence against
the dredger, the court directed the district court to enter a
judgment against the United States as the "party solely at fault."
Michigan Wisconsin, 551 F.2d at 954.

"positive assertions" made by the United States.  Id. at 953.  The
court summarily rejected the United States' attempt to exculpate
itself by virtue of the "site inspection clauses," reasoning that
such provisions do not shift the liability that flows from the
United States' representations.  Id.

The facts of Southern Natural Gas are similar to those of
Michigan Wisconsin:  the Corps issued permits to a pipeline company
to construct several submarine pipelines; the Corps also issued
dredging permits to several dredgers; and the dredging permits
specifically prohibited dredging near some pipelines, but did not
make any specific mention of the plaintiff company's pipelines.
Southern Natural Gas, 711 F.2d at 1251.  The dredger subsequently
struck one of the plaintiff company's pipelines.  Id. at 1254.
Affirming the district court's judgment against the United States,
the Fifth Circuit held that "by specifically prohibiting dredging
activities in the vicinity of one gas company's pipelines, the
Corps was obligated to prohibit dredging near other companies'
pipelines in the area."  Id. at 1256.  The court further held that
"[t]he Corps knew that the dredging companies' activities would be
incompatible with the submarine gas pipelines, and that a great
potential for an accident existed.  The Corps had the power to
prevent this danger.  Its failure to do so subjects it to liability
under the [SAA]."  Id.  The Fifth Circuit characterized the
United States' duty as a "duty to warn," which the court
hypothetically noted may be satisfied by a "simple notice or

-20-

warning of a particular hazard or activity, or the prohibition of a certain activity." Id.

(b) Analysis

As plaintiff, Contango bears the burden of proof at trial on its negligence claims. To prevail on its motion for summary judgment the United States must therefore show that there is an absence of evidence to support Contango's case. See Celotex, 106 S. Ct. at 2554. To prevail on its cross-motion for summary judgment Contango must present evidence that would require a directed verdict if the evidence went uncontroverted at trial. See Int'l Shortstop, 939 F.2d at 1264-65.

The United States owed Contango a duty of reasonable care. See Theriot, 245 F.3d at 400; Southern Natural Gas, 711 F.2d at 1254. The scope of this duty depends on the foreseeability of the harm suffered by Contango -- i.e., the damage to its pipeline as a result of the allision. See Great Lakes Dredge, 624 F.3d at 211. The foreseeability of the harm must be determined by reference to an "act or omission" on the part of the United States. See id. The court concludes that the dredging accident and the resulting damage to the pipeline were the foreseeable consequences of the United States' failure to include the Contango pipeline in the contract specifications. See Southern Natural Gas, 711 F.2d at 1256 ("The Corps knew that the dredging companies' activities would be incompatible with the submarine gas pipelines, and that a great

-21-

potential for an accident existed."). Because the United States'
duty arose out of the omission of the pipeline in the dredging
contract, the court concludes that the duty is properly
characterized as a duty to warn or notify Weeks Marine of the
error. The United States was required to exercise reasonable care
in carrying out that duty.

Michigan Wisconsin and Southern Natural Gas[49] support the
court's conclusion. Like the United States in Michigan Wisconsin,
the United States here made a "positive assertion" regarding the
Contango pipeline. By identifying five other pipelines in the
area, and omitting the Contango pipeline, the United States
asserted that the Contango pipeline did not exist. See Michigan
Wisconsin, 551 F.2d at 951; see also Southern Natural Gas, 711 F.2d
at 1256 ("by specifically prohibiting dredging activities in the
vicinity of one gas company's pipelines, the Corps was obligated to
prohibit dredging near other companies' pipelines in the area").
As a result the United States was under a duty to warn or notify
Weeks Marine about errors or omissions in those specifications.
See Michigan Wisconsin, 551 F.2d at 951; Southern Natural Gas, 711
F.2d at 1256.

---

[49]The United States argues that Southern Natural Gas is
inapplicable because it dealt with "dredging permits" instead of
"dredging contracts." United States' Reply in Support, Docket
Entry No. 70, p. 3. The court rejects this argument; the court is
not aware of any authority reveals a substantive difference between
a dredging permit and a dredging contract.

The court declines to apply the duty defined in <u>Bardeleben</u> to this case.  Although the United States argues that <u>Bardeleben</u> was not "limited to just the United States' duty in publishing charts,"[50] the Fifth Circuit did so limit its opinion in <u>Bardeleben</u>.  <u>See</u> <u>Bardeleben</u>, 451 F.2d at 141 (stating that the issue presented was "the duty of the United States as cartographer").  The United States concedes that the extent of the United States' duty as a cartographer is not at issue here.[51]  Even if the court accepted the United States' argument that <u>Bardeleben</u> was instead grounded in "the United States' duty in disseminating information to the maritime public,"[52] the court still would not be persuaded that <u>Bardeleben</u> controls this case.  This case is not about disseminating information to the maritime public.  The United States was involved in <u>Bardeleben</u> solely because it had publicly issued an erroneous chart, and it corrected its error in the Coast and Geodetic Survey chart with a revised Coast and Geodetic Survey chart and an announcement about the revised chart in an LNM.  By contrast the United States in this case had a contract with Weeks Marine.  The United States is not involved because of an initial erroneous publication of a chart, but instead because of the erroneous specifications in the dredging contract.  The court therefore concludes that the scope of the United States' duty is not defined by <u>Bardeleben</u>.

---

[50]United States' Reply in Support, Docket Entry No. 70, p. 5.

[51]<u>Id.</u>

[52]<u>Id.</u>

Having concluded that the scope of the United States' duty to use reasonable care included a duty to warn or notify Weeks Marine about the omission of the Contango pipeline in the contract specifications, the court must address whether this duty was breached.  Breach is a question of fact.  See Theriot, 245 F.3d at 394.  The dicta in Southern Natural Gas -- that the United States' duty in that case may have been discharged by a "simple notice or warning of a particular hazard or activity, or the prohibition of a certain activity" -- is instructive.  See Southern Natural Gas, 711 F.2d at 1256.  The court reads Southern Natural Gas to require more than mere notice to the maritime public to carry out a proper "notice or warning."   The United States was required to act reasonably in providing a notice or warning to Weeks Marine.  The question of breach is therefore a question of the effect of the updated NOAA charts and LNM 48/09.

The court concludes that whether the United States discharged its duty to provide a notice or warning to Weeks Marine by publishing the updated NOAA charts and issuing LNM 48/09 is a fact issue for trial.  The evidence does not establish whether the information did or did not reach Weeks Marine in a manner sufficient to notify Weeks Marine of the pipeline.  While the Weeks Marine Project Engineer downloaded the earlier version of RNC 11351, that chart did not include the Contango pipeline.[53]   The

---

[53]Deposition of Jennifer Caldwell, Ex. 7 to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-14, p. 97:1-11.

United States points to the warning to which the Project Engineer agreed when she downloaded that chart and argues that she should have also downloaded the more current chart that depicted the pipeline.[54]   Weeks Marine responds that the Project Engineer downloaded RNC 11351 for her own edification on the general area -- not because she utilized the chart to locate pipelines -- and therefore had no reason to regularly update the chart.[55]   Whether the warning to which the Project Engineer agreed when she downloaded the chart constituted a warning or notice for purposes of the United States' duty depends on circumstances such as industry custom and practice.   If the industry practice for engineers is to routinely update the NOAA charts in order to proceed with identifying pipelines, then the United States' duty to warn may have been satisfied.   If, on the other hand, the industry practice does not include the regular updating of such charts, then the United States would not have been reasonable in relying on its publication of the updated NOAA charts as a satisfaction of its duty to warn.   There are no facts in the summary judgment record on this matter.

Moreover, there is a factual dispute as to whether the Project Engineer relied on NOAA charts at all in practice.   The United States contends that its duty to warn was discharged in part

---

[54]Memorandum of Law, attached to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-2, p. 9.

[55]Weeks Marine's Opposition on United States' Liability, Docket Entry No. 58, p. 10.

by evidence that the Project Engineer compared information from other pipeline owners with the information provided in the out-of-date RNC 11351.[56]   The United States thus argues that it provided the sort of information, in the form of the updated NOAA charts, that was routinely employed by the Project Engineer.[57]   But Weeks Marine cites evidence that project engineers generally do not -- and did not in this case -- employ information outside of the contract specifications provided by the Corps.[58]

Similar fact issues are present with respect to LNM 48/09. The United States argues that Weeks Marine's Office Engineer should have reviewed LNM 48/09, should have noticed the announcement of the location of the Contango pipeline, and could have determined the pipeline's exact location based on the GPS coordinates by using Google Earth.[59]   But the facts reveal only that LNM 48/09 was available to the crew members of Weeks Marine, not that any crew members actually reviewed it.   Furthermore, Weeks Marine cites evidence that it was not Weeks Marine's regular practice to review

_____

[56]United States' Response in Opposition to Weeks Marine's Motion for Summary Judgment on Liability, Docket Entry No. 78, p. 4.

[57]Id.

[58]Weeks Marine's Response to the United States' Statement of Uncontested Facts, attached to Weeks Marine's Opposition on United States' Liability, Docket Entry No. 58-1, p. 7; Deposition of Jacques Andre, Ex. L to Weeks Marine's Opposition on United States' Liability, Docket Entry No. 58-14, p. 26:13-25.

[59]Memorandum of Law, attached to United States' Motion for Summary Judgment on Liability, Docket Entry No. 50-2, pp. 7-8.

LNMs during the dredging project.[60]   Whether the United States discharged its duty via LNM 48/09 depends on Weeks Marine's actual practices as well as industry custom and practice with respect to dredgers' review of information contained in LNMs.   These are circumstances on which there are no facts in the summary judgment record.

The United States also argues that all liability should be shifted to Weeks Marine because the Project Engineer was aware of other material discrepancies -- not involving the Contango pipeline -- between the contract specifications and other charts in her possession.[61]   The United States thus argues that Weeks Marine should not have relied on the contract specifications because the Project Engineer should have known that all of the specifications were subject to error.[62]   Taken to its logical end, this argument would render all information provided by the United States useless because of some incorrect information provided by the United States.

Accordingly, neither the United States nor Contango has demonstrated that no genuine issue of material fact exists with respect to the United States' liability in this action.   The

---

[60]Deposition of Jacques Andre, Ex. L to Weeks Marine's Opposition on United States' Liability, Docket Entry No. 58-14, p. 26:13-25.

[61]United States' Response to Contango's Cross-Motion for Summary Judgment, Docket Entry No. 80, p. 10.

[62]Id.

United States has failed to establish that there is an absence of evidence to support Contango's claims, and Contango has failed to present evidence that would require a directed verdict at trial. Summary judgment in favor of either the United States or Contango is therefore inappropriate.[63]

2. <u>Weeks Marine's Liability</u>

Weeks Marine, citing <u>Michigan Wisconsin</u>, 451 F.2d 945, argues that it acted as a reasonable dredger would when it relied on the assertions from the Corps that only five pipelines were implicated by the project.[64] Weeks Marine further argues that if the Corps had identified the Contango pipeline in its contract specifications, Weeks Marine would have learned of the location of the pipeline, and this incident never would have occurred.[65] Weeks Marine cites the RHA, 33 U.S.C. § 403, in support of its contention that dredging contractors should not be required to independently verify the existence of pipelines not identified in the dredging

---

[63]The court also concludes that summary judgment is inappropriate as to the allegations in Count III of the amended complaint. The United States is not entitled to the entry of a judgment because the court has already concluded that genuine issues of material fact exist with respect to the claims in Count I. Contango is not entitled to summary judgment on Count III because Contango cites no evidence in its cross-motion to support those claims.

[64]Memorandum in Support of Motion for Summary Judgment on Behalf of Weeks Marine Regarding Liability ("Memorandum of Law"), attached to Weeks Marine's Motion for Summary Judgment on Liability, Docket Entry No. 61-2, p. 2.

[65]<u>Id.</u> at 5.

contract.[66]   Weeks  Marine  frames  its  duty  as  a  duty  to  act
reasonably in relying on the contract specifications.[67]

Contango argues that Weeks Marine owed Contango a duty of care
to avoid striking the pipeline and that Weeks Marine's failure to
independently investigate the existence of pipelines in the area to
be dredged constituted a breach of that duty.[68]   Contango argues
that there was no justifiable reliance by Weeks Marine as a matter
of law because Weeks Marine undertook no independent investigation
of pipelines in the area to be dredged but instead relied solely on
the contract specifications.[69]   To prove that Weeks Marine did not
justifiably rely on the specifications, Contango cites evidence
that the Weeks Marine Project Engineer was aware of material
discrepancies between the contract specifications and other charts
in the engineer's possession.[70]   Contango also cites to evidence
that the contract alerts Weeks Marine to the possibility of
"unidentified pipelines."[71]   Contango further argues that Weeks

_____

[66]Weeks Marine's Reply to the Oppositions of the United States
(Rec. Doc. 78) and Contango (Rec. Doc. 83) to Weeks Marine's Motion
for Summary Judgment Regarding Liability (Rec. Doc. 61) ("Weeks
Marine's Reply on Liability"), Docket Entry No. 92, p. 7.

[67]Memorandum of Law, attached to Weeks Marine's Motion for
Summary Judgment on Liability, Docket Entry No. 61-2, p. 12.

[68]Id. at 5.

[69]Contango's Cross-Motion for Summary Judgment on Weeks
Marine's Liability, Docket Entry No. 83, pp. 5-6.

[70]Id. at 6.

[71]Id.; Ex. 10 to Contango's Motion for Summary Judgment on Res
Judicata, Docket Entry No. 65-12, ¶ 3.2.4.

Marine was "over-dredging" at three feet below the authorized depth and five feet outside the authorized channel area.[72]

The resolution of Weeks Marine's motion for summary judgment on liability, and Contango's cross-motion on that issue, follows from the principles set out in the above discussion on the United States' liability. Weeks Marine's duty to Contango was one of reasonable care, see Theriot, 245 F.3d at 400, and the scope of that duty is defined by the foreseeability of the harm suffered by Contango. See Great Lakes Dredge, 624 F.3d at 211. The court concludes that an allision with a submarine pipeline is a foreseeable consequence of dredging when the dredger is not aware of the submarine pipeline. The court therefore concludes that Weeks Marine was under a duty to act reasonably to avoid striking the Contango pipeline.

Whether this duty was breached is a question of fact. See Theriot, 245 F.3d at 394. Michigan Wisconsin is instructive as to the reasonableness of Weeks Marine's actions. Important for purposes of applying Michigan Wisconsin to this case is the fact that in Michigan Wisconsin neither NOAA nor the Coast Guard had issued charts or announcements that identified the ruptured pipeline. Although the court rejects Contango's argument that Weeks Marine was under a duty to independently investigate the accuracy of the specifications, see Michigan Wisconsin, 551 F.2d at

---

[72]Contango's Cross-Motion for Summary Judgment on Weeks Marine's Liability, Docket Entry No. 83, pp. 4-5.

953, the court cannot conclude as a matter of law that Weeks Marine acted reasonably under the circumstances in relying solely on the contract specifications, given the availability of the updated NOAA charts and LNM 48/09.[73]   Therefore, regardless of whether the United States' practice of identifying pipelines constituted a "prolonged course of conduct," see <u>Michigan Wisconsin</u>, 551 F.2d at 951, Weeks Marine's reliance on the United States' information is not, for purposes of summary judgment, necessarily justifiable. This conclusion is inextricably tied to the issue of the United States' liability -- both issues relate to the effect of the updated NOAA charts and LNM 48/09 and depend on circumstances such as Weeks Marine's practice and industry custom and practice. Because the facts on these issues are disputed, summary judgment is not appropriate.

The primary factual dispute is evinced in Contango's own briefs.   Contango cites to evidence that Weeks Marine was in possession of, and actually reviewed, the updated NOAA charts and LNM 48/09.[74]  But Contango also cites to evidence that Weeks Marine did not utilize NOAA charts and generally did not review LNMs to

---

[73]The court also rejects Weeks Marine's argument that the RHA, 33 U.S.C. § 403, absolved Weeks Marine from referring to NOAA charts.   The RHA does not provide a standard of care for maritime negligence actions.

[74]Plaintiff's Reply in Support of Motion for Summary Judgment on Weeks Marine's Fault ("Contango's Reply on Weeks Marine's Fault"), Docket Entry No. 89, p. 7; Deposition of Wilbert Dunbar, Ex. F to Contango's Reply on Weeks Marine's Fault, Docket Entry No. 89-6, p. 92:1-19.

locate pipelines.[75]  Whether Weeks Marine acted reasonably to avoid the Contango pipeline depends on whether dredgers generally rely on NOAA charts and LNMs, and whether Weeks Marine specifically was utilizing NOAA charts to aid its dredging process.  These facts are disputed and must be resolved at trial.

Moreover, the court concludes that like the "site inspection clauses" in Michigan Wisconsin, the fact that the contract indicated that "unidentified pipelines" may exist does not automatically shift the potential liability flowing from the United States' representations in the contract specifications. Contango has not cited to any summary judgment evidence that compels the conclusion that Weeks Marine's failure to investigate "unidentified pipelines" amounted to a breach of Weeks Marine's duty.  The contract states that "[a]ny unidentified pipelines . . . that may be found within the limits of the work, during the course of dredging shall not be disturbed."[76]  Weeks Marine argues that it did not find the pipeline because it did not know that the pipeline was there.  This contract language does not necessarily establish that Weeks Marine acted unreasonably.

There is also a factual dispute as to what constitutes "over-dredging" and as to whether any over-dredging on the part of Weeks

---

[75]Contango's Motion for Summary Judgment on Weeks Marine's Fault, Docket Entry No. 66, p. 7; Deposition of Jennifer Caldwell, Ex. 11 to Contango's Cross-Motion for Summary Judgment on United States' Liability, Docket Entry No. 62-12, p. 186:13-24.

[76]Ex. 10 to Contango's Motion for Summary Judgment on Res Judicata, Docket Entry No. 65-12, ¶ 3.2.4.

Marine amounted to negligence.  The dredging contract called for the Atchafalaya channel to be dredged at a width of 400 feet and a depth of twenty-two feet "mean low gulf" ("MLG").[77]  The United States and Contango contend that Weeks Marine was dredging at twenty-seven feet MLG and fifteen feet outside the channel at the time of the accident.[78]  The United States cites evidence that dredging more than twenty-four feet MLG or ten feet outside the channel constituted over-dredging and therefore negligence.[79]  Weeks Marine responds that the contract contained no provision limiting the dept and breadth at which Weeks Marine was permitted to place its cutterhead.[80]  Weeks Marine cites evidence that to accomplish the dredging project it was required to remove a greater swath of material -- i.e., more material than is included within the channel dimensions -- because material slides back into the void created during dredging.[81]  Weeks Marine argues that this was a reasonable

---

[77]United States' Response in Opposition to Weeks Marine's Motion for Summary Judgment [on Liability] ("United States' Response in Opposition"), Docket Entry No. 78, p. 5; Weeks Marine's Reply on Liability, Docket Entry No. 92, p. 11.

[78]United States' Response in Opposition, Docket Entry No. 78, p. 5; Contango's Cross-Motion for Summary Judgment on Weeks Marine's Liability, Docket Entry No. 83, p. 9.

[79]United States' Response in Opposition, Docket Entry No. 78, p. 5; Deposition of Charles W. Granger, Sr., Ex. 8 to United States' Response in Opposition, Docket Entry No. 78-9, pp. 85-88.

[80]Weeks Marine's Reply on Liability, Docket Entry No. 92, p. 11.

[81]Id. at 12; Deposition of Jennifer Caldwell, Ex. C to Weeks Marine's Reply on Liability, Docket Entry No. 92-3, p. 136:7-23.

action under industry practice.[82]   The court is not permitted to weigh the credibility of contradictory evidence at the summary judgment stage.   The court therefore concludes that fact issues exist as to whether Weeks Marine was over-dredging and whether any such over-dredging constituted a breach of duty.

Because the summary judgment record reveals genuine disputes as to material facts pertaining to Weeks Marine's liability,[83] neither Weeks Marine nor Contango has shown that summary judgment is appropriate.

## B.   Weeks Marine's Fault

In Contango's Motion for Summary Judgment on Weeks Marine's Fault (Docket Entry No. 66) Contango argues that a presumption of fault applies against Weeks Marine because its dredge, the G.D. MORGAN, allided with Contango's stationary pipeline.[84]   Contango argues that because Weeks Marine cannot rebut that presumption, Contango is entitled to summary judgment that Weeks Marine bears fault for the allision as a matter of law.[85]   Weeks Marine responds

---

[82]Weeks Marine's Reply on Liability, Docket Entry No. 92, p. 11.

[83]The parties do not address the allegations in Count III concerning the violation of federal regulations.  Having concluded that summary judgment is not appropriate on the Count II claim, the court will not reach the matters concerning the federal regulations.

[84]Contango's Motion for Summary Judgment on Weeks Marine's Fault, Docket Entry No. 66, p. 5.

[85]Id.; Contango's Reply on Weeks Marine's Fault, Docket Entry No. 89, p. 6.

that the presumption does not apply and, in the alternative, that the presumption has been rebutted.[86]

1. Applicable Law

Where a non-self-propelled vessel and a stationary object allide, the rule of THE LOUISIANA, 3 Wall. (70 U.S.) 164 (1865), creates a presumption of fault that shifts the burden of proof to the party in control of the vessel. Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC, 615 F.3d 599, 604 (5th Cir. 2010). In allisions involving a sunken stationary object, the presumption only applies where the party in control of the vessel "knew or should have known" of the existence of the stationary object. Delta Transload, Inc. v. Motor Vessel, Navios Commander, 818 F.2d 445, 450 (5th Cir. 1987). The party invoking the presumption bears the burden to prove knowledge. Id. at 450-51.

To rebut the presumption, the party against whom the presumption applies bears the burden of disproving fault by a preponderance of the evidence. James v. River Parishes Co., Inc., 686 F.2d 1129, 1133 (5th Cir. 1982). The Fifth Circuit has outlined three ways in which a defendant can rebut the presumption. "The defendant can demonstrate that: (1) the allision was the fault of the stationary object; (2) that the

---

[86]Weeks Marine's Opposition to Plaintiff's Motion for Partial Summary Judgment on Weeks Marine's Fault – Failure to Rebut Presumption ("Weeks Marine's Opposition"), Docket Entry No. 85, p. 3.

moving vessel acted with reasonable care; or (3) that the allision was an unavoidable accident."  Id. at 605 (internal quotation marks omitted).

### 2.  Analysis

As the party moving for summary judgment Contango bears the initial burden to demonstrate that the presumption applies and that there is an absence of evidence to support a rebuttal of the presumption.  See Celotex, 106 S. Ct. at 2554.  If the presumption applies, as the party in control of the vessel, Weeks Marine bears the burden to demonstrate that material facts exist over which there is a genuine issue for trial.  See Reyna, 401 F.3d at 349. As the non-moving party at the summary judgment stage, Weeks Marine is not required to disprove fault by a preponderance of the evidence -- that standard applies only at trial.

The court concludes that summary judgment on the matter of Weeks Marine's fault is precluded by fact issues relating to Weeks Marine's knowledge and exercise of due care.  Genuine issues of material fact exist as to whether Weeks Marine knew or should have known of the existence of the pipeline.  As discussed in the preceding section regarding Weeks Marine's liability generally, the parties dispute whether Weeks Marine actually reviewed -- or pursuant to industry practice should have reviewed -- the updated NOAA charts and LNM 48/09.  Therefore, the court concludes that Contango has failed to demonstrate that no genuine issues of material fact exist as to the applicability of the presumption.

See Delta Transload, 818 F.2d at 450-51.   There are also factual disputes as to whether Weeks Marine employed due care.   Even assuming that the presumption applies, the court concludes that Contango has failed to establish that there is absence of evidence to support Weeks Marine's contention that it employed due care in carrying out its dredging activities.   Fact issues exist as to whether Weeks Marine acted reasonably.   Although the burdens in the above discussion on Weeks Marine's liability are not the same burdens at issue here, the court concludes that the same disputed facts that precluded summary judgment on the general question of liability preclude summary judgment on the question of the presumption of fault.

## C.   Government Contractor Defense

Weeks Marine and Contango have filed separate motions on the government contractor defense:   Weeks Marine's Motion for Summary Judgment on Government Contractor Defense (Docket Entry No. 59) and Contango's Cross-Motion for Summary Judgment on Government Contractor Defense (Docket Entry No. 82).   Weeks Marine argues that "[t]he actions of Weeks [Marine] were the actions of the [United States] and thus, Contango must look to the [United States] for compensation."[87]   Weeks Marine states that the government contractor defense "is based on the premise that a private

---

[87]Memorandum in Support of Motion for Summary Judgment on Behalf of Weeks Marine – Government Contractor Defense ("Memorandum in Support"), attached to Weeks Marine's Motion for Summary Judgment on Government Contractor Defense, Docket Entry No. 59-1, p. 9.

contractor performing acts for the government should not be liable for these acts if the federal government would be immune from liability had it performed the acts directly."[88]  Weeks Marine thus argues that it is entitled to summary judgment because it is immune from liability.[89]  In its cross-motion Contango argues that Weeks Marine is not entitled to immunity because the United States is not entitled to immunity in this case.[90]  Contango further argues that the government contractor defense does not apply because Weeks Marine itself was negligent.[91]

### 1.  Applicable Law

"Government contractor immunity is derived from the government's immunity from suit where the performance of a discretionary function is at issue."  Kettsetter v. Pacific Scientific Co., 210 F.3d 431, 435 (5th Cir. 2000).  Government contractors are therefore "entitled to assert the government's sovereign immunity in suits arising from [discretionary function] activities."  Bynum v. FMC Corp., 770 F.2d 556, 564 (5th Cir. 1985).  The Suits in Admiralty Act contains a discretionary function exception:  While the United States has waived its immunity from tort suits under the Act, the exception bars suits

---

[88]Id. at 10.

[89]Id. at 17.

[90]Contango's Cross-Motion for Summary Judgment on Government Contractor Defense, Docket Entry No. 82, p. 3.

[91]Id. at 3-4.

against the United States for discretionary actions based on policy considerations.  Wiggins v. United States Through Dept. of Army, 799 F.2d 962, 965 (5th Cir. 1986).

A defendant asserting the government contractor defense must also establish that it did not exceed its authority in performing the contract.  In Yearsley v. W.A. Ross Constr. Co., 60 S. Ct. 413, 414 (1940), the Court held that if the "authority to carry out the project was validly conferred" and the contractor has not "exceeded his authority" in acting on behalf of the United States, "there is no liability on the part of the contractor for executing [the United States'] will."  Accordingly, under Yearsley a party acting on behalf of the government will be liable for actions causing injury to another if (1) the authority to carry out the contract was not validly conferred or (2) the contractor exceeded his authority in performing the acts that caused the injury.  The Fifth Circuit expanded upon the second prong in Ackerson v. Bean Dredging LLC, 589 F.3d 196 (5th Cir. 2009).  In Ackerson the court concluded that Yearsley barred a suit against the defendant-contractors, finding that the contractors had not "exceeded their authority" as a matter of law.  Id. at 207.  The court reasoned that the plaintiffs had alleged that the entire government project -- the subject of the contract -- caused the plaintiffs' injuries, "not any separate act of negligence by the [c]ontractor-[d]efendants." Id.; see also City of Worcester v. HCA Mgmt. Co., Inc., 753 F. Supp. 31, 38 (D. Mass. 1990) (government contractor not entitled

-39-

to immunity where "the harm was caused by the [contractor's] own tortious conduct"). The government contractor defense therefore requires a contractor to have acted without negligence in performing actions pursuant to a contract.

2. Analysis

Because the government contractor defense is an affirmative one, Weeks Marine bears the burden of proof at trial. Bailey v. McDonnell Douglas Corp., 989 F.2d 794, 802 (5th Cir. 1993). To prevail on summary judgment Weeks Marine must present evidence that establishes each element of that defense as a matter of law. See Shanks, 169 F.3d at 992. To prevail on its cross-motion Contango must show that there is an absence of evidence to support the affirmative defense. Celotex, 106 S. Ct. at 2554.

Weeks Marine has failed to establish that it is entitled to assert the United States' sovereign immunity. The United States owed a duty of care to Contango, and there are genuine issues of material fact as to whether that duty was breached. No sovereign immunity has been established. The court therefore concludes that there is no governmental immunity from which an immunity may be derived for the benefit of Weeks Marine.

Moreover, Weeks Marine has also failed to establish that it acted without negligence. There is no dispute that the authority to carry out the dredging project was validly conferred. But there is a genuine issue of fact as to whether Weeks Marine exceeded its

-40-

authority in carrying out the dredging project.   Unlike the
contractors in <u>Ackerson</u>, Weeks Marine is alleged to have acted
negligently in performing the dredging activities, the subject of
the government contract.   The court's conclusion that there are
genuine issues of material fact as to Weeks Marine's liability for
negligence therefore compels the conclusion that Weeks Marine is
not entitled to judgment as a matter of law based on the government
contractor defense.   Similarly, the genuine issue of material fact
regarding Weeks Marine's negligence compels the conclusion that
Contango has failed to establish that there is an absence of
evidence to support Weeks Marine's assertion of the government
contractor defense.   The court therefore concludes that summary
judgment in favor of either party is not appropriate.

**D.   Res Judicata and Collateral Estoppel**

In their answers to Contango's amended complaint the
United States and Weeks Marine both assert as an affirmative
defense that Contango's damages were caused in whole or in part by
Contango's own negligence.[92]   In Contango's Motion for Summary
Judgment on Res Judicata (Docket Entry No. 65), Contango argues
that this affirmative defense is precluded by <u>res judicata</u> or,
alternatively, collateral estoppel in light of a prior judgment in

---

[92]Answer of the United States, Docket Entry No. 30, p. 7;
Defendant Weeks Marine's Answer to Plaintiffs' First Amended
Complaint and Cross-Claim Against the United States, Docket Entry
No. 33, p. 7.

favor of Contango in the United States District Court for the Eastern District of Louisiana.[93] The United States and Weeks Marine respond that neither res judicata nor collateral estoppel applies.[94]

Contango, Weeks Marine, and the United States were co-defendants in the prior action, a personal injury case arising out of a gas explosion alleged to have been caused by the rupture to the pipeline. The Louisiana court held that Contango was not at fault for the incident because Contango was not required to physically mark the pipeline and because -- following the submission of as-built drawings to MMS and NOS -- "the pipeline was marked on the NOAA chart prior to the explosion."[95] Thereafter, the court dismissed Weeks Marine's cross-claim seeking to impose liability on Contango in the personal injury case.[96]

---

[93]Contango's Motion for Summary Judgment on Res Judicata, Docket Entry No. 65, p. 6; Plaintiff's Reply to Opposition of the USA and Weeks Marine to Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defense of Comparative Negligence ("Contango's Reply on Res Judicata"), Docket Entry No. 90.

[94]Weeks Marine's Opposition to Plaintiff Contango's Motion for Partial Summary Judgment on Affirmative Defense of Comparative Negligence ("Weeks Marine's Opposition on Res Judicata"), Docket Entry No. 84; United States' Response in Opposition to Contango's Motion for Partial Summary Judgment ("United States' Response on Res Judicata"), Docket Entry No. 86.

[95]Order and Reasons, Ex. 17 to Contango's Motion for Summary Judgment on Res Judicata, Docket Entry No. 65-19, pp. 5-6.

[96]Order, Ex. 18 to Contango's Motion for Summary Judgment on Res Judicata, Docket Entry No. 65-20; Cross Claim on Behalf of Calm C's Inc. and Weeks Marine, Inc., Ex. 14 to Contango's Motion for Summary Judgment on Res Judicata, Docket Entry No. 65-16.

1. *Res Judicata*

Under the doctrine of <u>res judicata</u>, also known as claim preclusion, a judgment on the merits in a prior suit may bar a subsequent suit based on the same cause of action.  Four elements must be satisfied for <u>res judicata</u> to bar a subsequent suit:  (1) the parties in the prior action and the pending action must be identical; (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both the prior action and the pending action.  <u>United States v. Davenport</u>, 484 F.3d 321, 326 (5th Cir. 2007).  The party asserting that <u>res judicata</u> bars an action bears the burden to establish the elements of the doctrine as a matter of law.  <u>Grynberg v. BP P.L.C.</u>, 855 F. Supp. 2d 625, 649 (S.D. Tex. 2012).

Contango argues that the first three elements of <u>res judicata</u> are satisfied "as they are matters of fact."[97]  Citing <u>Oreck Direct, LLC v. Dyson, Inc.</u>, 560 F.3d 398, 402 (5th Cir. 2009), Contango asserts that the fourth element of <u>res judicata</u> "requires that the two actions be based on the same 'nucleus of operative facts.'"[98]  Contango argues that the application of <u>res judicata</u> in this case

---

[97]Contango's Motion for Summary Judgment on Res Judicata, Docket Entry No. 65, p. 6.

[98]<u>Id.</u> at 7.

-43-

is therefore warranted because both the prior and present "actions" are based on the alleged fault of Contango.[99]

Contango's statement of the law regarding the fourth element of res judicata is correct, but that principle does not apply here. For purposes of res judicata the dispositive question is not whether comparative negligence was at issue in both cases; instead, the question is whether the "same claim or cause of action" was involved in both cases. See Davenport, 484 F.3d at 326. There is no claim or cause of action in this case involving comparative negligence -- Weeks Marine and the United States are asserting comparative negligence as an affirmative defense. Res judicata, when it applies, bars claims or causes of action, not affirmative defenses. The court therefore concludes that Contango has failed to establish the elements of res judicata as a matter of law.

2. Collateral Estoppel

Collateral estoppel, also known as issue preclusion, is a separate doctrine that precludes a party from litigating an issue if (1) the same parties were involved in a prior action; (2) the issue at stake is identical to the one involved in the prior action; (3) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment. Test Masters Educ. Servs., Inc. v.

---

[99]Id.

Singh, 428 F.3d 559, 572 (5th Cir. 2005). In cases concerning offensive collateral estoppel, the party seeking preclusion must also demonstrate that "no special circumstances exist that would render preclusion inappropriate or unfair." Universal Am. Barge v. J-Chem, Inc., 946 F.2d 1131, 1136 (5th Cir. 1991). "Collateral estoppel does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are the same in both proceedings." Copeland v. Merrill Lynch & Co., Inc., 47 F.3d 1415, 1422 (5th Cir. 1995). The party asserting that collateral estoppel bars an action bears the burden of proof on the elements of those doctrines. Matter of King, 103 F.3d 17, 19 (5th Cir. 1997).

Contango argues that the issue at stake here -- "Contango's fault for the allision" -- is the same issue that was raised in the prior action.[100] Contango argues that collateral estoppel applies because "judicial inquiry has already determined that [Contango] has no fault for the allision."[101] In response Weeks Marine argues that the only issues presented and ruled upon in the prior action were the issues of whether Contango "submitted 'as-built' drawings to the Corps and whether its pipeline was properly marked."[102] The

---

[100]Contango's Motion for Summary Judgment on Res Judicata, Docket Entry No. 65, p. 10.

[101]Contango's Reply on Res Judicata, Docket Entry No. 90, p. 8.

[102]Weeks Marine's Opposition on Res Judicata, Docket Entry No. 84, p. 5.

United States argues that the only issues decided in the prior action were whether Contango was required to physically mark its pipeline and whether Contango was obligated to notify the plaintiff of the existence of the pipeline.[103]

The resolution of the motion for summary judgment on collateral estoppel turns on the level of generality at which the relevant issue should be described. The court in the prior action made clear that the issue was one of notice when it held that Contango was not required to physically mark the pipeline and was not responsible for the plaintiff's failure to check the relevant NOAA chart prior to the accident.[104]  On the issue of as-built drawings, the court only found that Contango had submitted the drawings to MMS and NOS. Neither the depth of the pipeline[105] nor whether Contango had submitted as-built drawings to the Corps was in dispute.  Therefore, the issues of whether Contango buried its pipeline at the required depth and whether Contango submitted as-built drawings -- both of which are relevant to the affirmative

---

[103]United States' Response on Res Judicata, Docket Entry No. 86, p. 9.

[104]Order and Reasons, Ex. 17 to Contango's Motion for Summary Judgment on Res Judicata, Docket Entry No. 65-19, pp. 5-6. Contrary to Week Marine's characterization of the prior opinion, the court did not rule on whether Contango was required to submit as-built drawings to the Corps.

[105]In fact the court explicitly explained that the plaintiff disputed "neither the depth of the pipeline, the manner in which it was laid, nor whether the proper permit was acquired."  Order and Reasons, Ex. 17 to Contango's Motion for Summary Judgment on Res Judicata, Docket Entry No. 65-19, p. 4.

defense of Contango's comparative negligence -- are not barred by collateral estoppel.  These two issues are not identical to the issues involved in the prior action, nor were they a necessary part of the prior judgment.  See Singh, 428 F.3d at 572.  Accordingly, Contango has failed to establish the elements of collateral estoppel as a matter of law.  Matter of King, 103 F.3d at 19.

## IV.  Conclusion and Order

The court concludes that genuine issues of material fact exist as to all issues of liability, the government contractor defense, and res judicata and collateral estoppel.  The court also concludes that reconsideration of its October 26, 2011, Memorandum Opinion and Order is not warranted.  Accordingly,

- Weeks Marine's Motion for Reconsideration of the Court's Opinion and Order (Rec. Doc. 34) (Docket Entry No. 60) is **DENIED;**

- The United States of America's Motion for Summary Judgment [on Liability] (Docket Entry No. 50) is **DENIED;**

- Motion for Summary Judgment on Behalf of Weeks Marine Regarding Liability (Docket Entry No. 61) is **DENIED;**

- Plaintiffs' Cross-Motion for Summary Judgment on the USA's Liability (Docket Entry No. 62) is **DENIED;**

- Plaintiffs' Cross-Motion for Summary Judgment on [Weeks Marine's] Liability (Docket Entry No. 83) is **DENIED;**

- Plaintiffs' Motion for Partial Summary Judgment on Weeks Marine's Fault – Failure to Rebut Presumption (Docket Entry No. 66) is **DENIED.**

-47-

- Motion for Summary Judgment on Behalf of Weeks Marine – Government Contractor Defense (Docket Entry No. 59) is **DENIED**;

- Plaintiffs' Cross-Motion for Summary Judgment on the Government Contractor Defense (Docket Entry No. 82) is **DENIED**;

- Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defense of Comparative Negligence [Res Judicata] (Docket Entry No. 65) is **DENIED**.

The joint pretrial order will be filed by September 6, 2013. Docket call will be held on September 13, 2013, at 3:00 p.m., in Courtroom 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.  The parties have filed a number of motions to strike experts or exclude experts' reports.  The court's practice is to rule on motions to strike or exclude expert testimony in the course of the trial.  Experts frequently modify their opinions, and at trial counsel establish more extensive predicates for experts' testimony.  Moreover, the context in which the testimony is offered is necessary to effectively rule on such issues.  Accordingly, Defendant Weeks Marine's Motion to Strike Plaintiffs' Proposed Expert, Captain Christopher Karentz (Docket Entry No. 51); Defendant Weeks Marine's Motion to Strike Plaintiffs' Proposed Expert, Ian Anderson (Docket Entry No. 52); Plaintiffs' Motion to Exclude Expert Opinions of Darren Heal (Docket Entry No. 53); and Plaintiffs' Motion to Exclude Expert Opinions 7 & 8 of Robert Vann Regarding Likelihood of Pipeline Being Struck (Docket Entry No. 54) are **DENIED**.  The parties may

reurge the arguments contained in these motions at trial if these witnesses testify at trial.[106]

**SIGNED** at Houston, Texas, on this the 15th of August, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[106]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with the pending motions. As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.